UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YESENIA BARRERA                          CIVIL ACTION

VERSUS                                   NO. 14-1889

MICHAEL AULDS ET AL.                     MAGISTRATE JUDGE
                                         JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

In this employment discrimination action, plaintiff, Yesenia Barrera, brings several claims against two sets of defendants. She alleges that defendants, Acme Truck Line, Inc. and its officers Michael Aulds and Michael Coatney (collectively "Acme"), violated the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:301 et seq.; the Louisiana whistleblower statute, La. Rev. Stat. § 23:967; and Title VII, 42 U.S.C. § 2000e et seq.,[1] when Acme discriminated against her based on her gender; Aulds created a hostile working environment by sexually harassing her; and Acme retaliated against her for having complained about sexual harassment and illegal financial practices by terminating her contract as a Sales Commission Representative. She also claims that Acme breached the contract. Barrera alleges that defendants, Quad B Transportation, LLC and its principal, David Breaux (collectively "Quad B"), discriminated against her based on her gender and retaliated against her for whistleblowing activity, in violation of La. Rev. Stat. § 23:301 et seq., La. Rev. Stat. § 23:967 and Title VII. In addition, plaintiff asserts claims

---

[1]Although Barrera's original state court petition did not mention Title VII specifically, she alleged that defendants' actions violated concurrent federal law. Defendants removed the action to this court based on federal question jurisdiction. Record Doc. No. 1.

of defamation and intentional infliction of emotional distress against all defendants under Louisiana state law.  First Supplemental and Amending Petition for Damages and Complaint, Record Doc. No. 73.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 54.

The Quad B defendants filed a motion for summary judgment on all of plaintiff's claims against them, supported by excerpts from plaintiff's deposition transcripts, affidavits of nonparty witnesses and a documentary exhibit.  Record Doc. No. 123.  The Acme defendants filed a motion for summary judgment on all of plaintiff's claims against them, supported by the declaration under penalty of perjury of Acme's Chief Financial Officer, Kimberly Foster; excerpts from plaintiff's deposition transcripts; and documentary exhibits.  Record Doc. No. 125.

Because plaintiff is now proceeding pro se,[2] the court ordered her to respond in writing with supporting evidence after each motion was filed.  Each court order stated that Barrera's "response should include sworn affidavits or other evidentiary materials that set

_____

[2]Barrera was represented by an attorney throughout most of these proceedings.  Her attorney was permitted to withdraw on January 29, 2016.  Record Doc. Nos. 116, 117, 119.  She subsequently advised the court that she had retained a new lawyer to represent her, Record Doc. No. 120, but no lawyer ever enrolled on her behalf.

2

forth specific facts demonstrating that there is a genuine issue of material fact for trial in this case.  Failure to follow the requirements of this order may result in entry of final judgment in favor of defendants without a further hearing."  Record Doc. Nos. 124, 126. Plaintiff timely opposed the summary judgment motions, Record Doc. Nos. 127, 128, but did not submit any sworn evidence in support of her opposition memoranda.  Instead, she submitted a flash drive containing an audio recording of a telephone conversation. Record Doc. No. 128.

Having considered the complaint, as amended; the record; the arguments of the parties and the applicable law, IT IS ORDERED that defendants' motions for summary judgment are GRANTED for the following reasons.

<u>ANALYSIS</u>

A.    <u>Standards of Review</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.

(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

4

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will not

prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.     The Undisputed Material Facts

The statements of uncontested material facts submitted by Quad B, Record Doc. No. 123-2, and Acme, Record Doc. No. 125-5, are supported by competent summary judgment evidence. Barrera has not provided any competent summary judgment evidence to demonstrate that material facts are in dispute, and I find none in the record as a whole.

In one of her opposition memoranda, plaintiff alleges that Breaux made certain statements during "the deposition." Record Doc. No. 127. However, there is no sworn deposition of Breaux in the record. The flash drive that Barrera submitted contains an

audio recording of a telephone conference between herself, her attorney, Breaux and Breaux's attorney on December 15, 2015.  Record Doc. No. 128-1.

Although the audio recording is not verified, I have reviewed it.  The accounts by Breaux and his attorney during that telephone conversation of the contents of oral and/or written statements made by other persons are inadmissible hearsay.  "'Hearsay' means a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801.  Hearsay is not admissible unless it falls within an exception established by a federal statute or rule.  Fed. R. Evid. 802.  Inadmissible hearsay fails to create a genuine issue of material fact.  Yancy v. U.S. Airways, Inc., 469 F. App'x 339, 342 n.1 (5th Cir. 2012).

In her opposition memoranda, Barrera cites admissions that Breaux allegedly made to her during that recorded conversation and at other times.  Even if Breaux's statements on the audio recording about his own knowledge or conduct, or his attorney's statements about what Breaux told the attorney about Breaux's knowledge or conduct, are admissible as non-hearsay statements of an opposing party under Fed. R. Evid. 801(d)(2)(A) or (C), those statements do not support plaintiff's contention that Breaux "admits to Slandering and defaming [her] name over the years."  Record Doc. No. 127.  On the contrary, Breaux denied more than once during the telephone conference that he ever said anything

7

negative about Barrera.  His attorney stated during the conference that Breaux had told him the same thing.   Plaintiff's own statements during that conversation and her deposition testimony confirm that she never heard Breaux make any derogatory statements about her.  Record Doc. No. 128-1, audio recording; Record Doc. No. 123-4, first deposition of Yesenia Barrera, Quad B defendants' Exh. A, at pp. 166, 169, 176; Record Doc. No. 123-9, second deposition of Yesenia Barrera, Quad B defendants' Exh. F, at pp. 222-28.

Accordingly, solely for purposes of the pending motion for summary judgment, the facts in defendants' statements of uncontested material facts are accepted as undisputed. Acme and Quad B are in the trucking business.   A significant portion of Acme's operations is handled through a system of independent contractors called "sales commission representatives," who operate out of regional terminals.   The sales commission representatives contract with Acme to use their best efforts in soliciting customers and vehicular equipment in the transportation and hauling of commodities, and are paid entirely on a commission basis.  Quad B owned and operated Acme Terminal 59 in New Iberia, Louisiana.  Barrera worked for Quad B from January 2008 to August 2008, when she quit voluntarily.

Barrera contracted with Acme in December 2008 to be a Sales Commission Representative. She was the owner and manager of the Coteau terminal located in Lafayette, Louisiana. She operated the terminal under the name Midnight Trucking.

On April 30, 2013, Acme informed Barrera, doing business as Midnight Trucking, in writing of defendant's intent to terminate the relationship between the parties effective immediately. Plaintiff received written notice of the termination. She filed the instant lawsuit on April 22, 2014.

Additional undisputed material facts relevant to each claim are discussed in connection with defendants' summary judgment motions as to each claim below.

C.    Acme's Motion for Summary Judgment

Plaintiff claims that Acme violated Title VII, the Louisiana Employment Discrimination Law and the Louisiana whistleblower statute.[3] She alleges that Aulds sexually harassed her, Acme discriminated against her based on her sex, and Acme retaliated against her by terminating her contract because she complained to Acme about Aulds's sexual harassment and about illegal activities that she saw when she previously worked at Quad B. Barrera also claims that the termination breached her Sales Commission Representative contract with Acme. Finally, she alleges that Aulds and/or

_____

[3]Plaintiff's claims against Aulds, Coatney and Breaux individually under these three statutes were previously dismissed. Record Doc. Nos. 60, 65.

9

Coatney defamed her and intentionally inflicted emotional distress on her in violation of Louisiana state law.

        1.    <u>Plaintiff's Title VII claims against Acme</u>

To the extent that Barrera might have been Acme's employee (which she was not, as discussed below), Acme argues that her Title VII claims must be dismissed for failure to exhaust administrative remedies.  It is undisputed that plaintiff never filed a charge of discrimination or retaliation with the Equal Employment Opportunity Commission.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief."  <u>McClain v. Lufkin Indus., Inc.</u>, 519 F.3d 264, 273 (5th Cir. 2008).  The filing of a charge with the EEOC within 300 days of the last discriminatory or retaliatory act and receipt of a notice of right to sue are prerequisites to filing a Title VII suit in Louisiana.  <u>Janmeja v. Bd. of Supervisors</u>, 96 F. App'x 212, 214 (5th Cir. 2004).  Any claims based on alleged discriminatory or retaliatory events that occurred more than 300 days before the charge was filed are time-barred.  <u>Id.</u>  Failure to file a charge with the EEOC and exhaust administrative remedies before filing suit will result in dismissal of the lawsuit.  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002); <u>Hague v. Univ. of Tex. Health Sci. Ctr.</u>, 560 F. App'x 328, 331 (5th Cir. 2014); <u>Price v. Choctaw Glove & Safety Co.</u>, 459 F.3d 595, 598 (5th Cir. 2006).

The limitations period in the instant case expired at the latest on February 24, 2014, which was 300 days after Barrera's contract was terminated effective April 30, 2013. Termination letter, deposition exhibit 3 to Defendants' Exh. B,[4] plaintiff's first deposition. She filed suit on April 22, 2014, about two months after the limitations period expired. Accordingly, plaintiff's Title VII claims against Acme are time-barred and Acme's motion is granted as to those claims.

### 2.   Plaintiff's state law sexual harassment claims against Acme

To the extent that Barrera might have been Acme's employee (which she was not, as discussed below), her sexual harassment claims against Acme under the Louisiana Employment Discrimination Law are subject to a prescriptive period of one year.  La. Rev. Stat. § 23:303(D).  Plaintiff testified that the last incident of alleged sexual harassment by Aulds occurred in January 2013.  Defendants' Exh. B, plaintiff's first deposition at pp. 137-38; Defendants' Exh. C, plaintiff's second deposition at p. 152.  She filed suit on April 22, 2014, more than one year after the last alleged incident.

Plaintiff's sexual harassment claims against Acme under Louisiana law prescribed before she filed suit.  Therefore, Acme is entitled to summary judgment in its favor on plaintiff's sexual harassment claims as a matter of law.

---

[4]All citations to defendants' exhibits in this section of this decision are to the Acme defendants' exhibits attached to their motion for summary judgment.  Record Doc. No. 125.

### 3.     Plaintiff's employment status with Acme

The undisputed, competent summary judgment evidence establishes that Acme was never plaintiff's employer.  Even if her sexual harassment claims had not prescribed, she cannot bring any claims of discrimination or retaliation against Acme under the Louisiana Employment Discrimination Law or whistleblower statute because those statutes apply only to employers.  La. Rev. Stat. §§ 23:302(2), 23:332, 23:967.

"Although the whistleblower statute itself does not define employer, district courts within the Fifth Circuit have applied the definition of 'employer' provided under Louisiana's Employment Discrimination Law, La. Rev. Stat. § 23:302(2), to claims brought under the whistleblower statute, La. Rev. Stat. § 23:967." Johnson v. Hosp. Corp., 767 F. Supp. 2d 678, 691 n.2 (W.D. La. 2011) (citing Jones v. JCC Holding Co., No. 01-0573, 2001 WL 537001, at *3 (E.D. La. May 21, 2001); Langley v. Pinkerton's Inc., 220 F. Supp. 2d 575, 580 (M.D. La. 2002); Jackson v. Xavier Univ., No. 01-1659, 2002 WL 1482756, at *6 (E.D. La. July 8, 2002)); accord English v. Wood Grp. PSN, Inc., No. 15-568, 2015 WL 5061164, at *10-11 & n.8 (E.D. La. Aug. 25, 2015) (citing Myers v. BP Am., Inc., No. 6:08-0168, 2010 WL 3878920, at *3 (W.D. La. Sept. 28, 2010); Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc., No. 10-584, 2011 WL 6046984, at *2 (M.D. La. Dec. 6, 2011); Ray v. Bossier City, 859 So. 2d 264, 272 (La. App. 2d Cir. 2003)) (additional citations omitted).

Barrera was not Acme's employee.  She was an independent contractor operating a regional trucking terminal under a Sales Commission Representative Agreement. Deposition exhibit 2 to Defendant's Exh. B, plaintiff's first deposition.  Plaintiff has submitted a flash drive containing an audio recording that she argues proves that Acme "interfere[d] with the commission terminals' decisions by who was hired or let go, [etc]. The commission terminals were not allowed to run their terminals the way they wanted." Record Doc. No. 128.

Even if these allegations are true and Acme exercised some degree of control over Barrera's terminal operations, that does not establish that Acme was her employer for purposes of the relevant Louisiana statutes.  The Louisiana Employment Discrimination Law defines an "employer" as "a person, association, legal or commercial entity, . . . receiving services from an employee and, in return, giving compensation of any kind to an employee." La. Rev. Stat. Ann. 23:302(2).  This definition, which also applies to the whistleblower act, "requires [that] an employer be one who compensates the employee rather than one who has the right to control the employee." English, 2015 WL 5061164, at *10 (citing La. Rev. Stat. Ann. 23:302(2); Seal v. Gateway Cos., No. 01-1322, 2002 WL 10456, at *5 (E.D. La. Jan. 3, 2002)).

Factors to consider in determining whether a company is plaintiff's "payroll employer," id., who "compensates the employee" include whether the company paid her

wages and/or benefits; withheld federal, state, unemployment or social security taxes for her; and carried her name on the company's payroll. <u>Johnson</u>, 767 F. Supp. 2d 698-99; <u>Langley v. Pinkerton's Inc.</u>, 220 F. Supp. 2d 575, 580 (M.D. La. 2002); <u>Seal</u>, 2002 WL 10456, at *5; <u>Dejoie v. Medley</u>, 9 So. 3d 826, 830 (La. 2009); <u>Onyeanusi v. Times-Picayune Publishing Corp.</u>, 485 So. 2d 622, 623 (La. App. 4th Cir. 1986).

Defendant's unrebutted, competent evidence establishes that Acme did none of these things in relation to Barrera. Acme's Statement of Uncontested Material Facts, Record Doc. No. 125-25 at ¶¶ 7-18, 21-31. Therefore, she was not Acme's employee for purposes of the Louisiana Employment Discrimination Law and whistleblower statute. Acme is entitled to summary judgment in its favor as a matter of law on Barrera's claims under both statutes.

4.   <u>Plaintiff's breach of contract claim against Acme</u>

Barrera alleges that Acme breached the Sales Commission Agreement by terminating the contract and because Aulds sexually harassed her. As to termination, the Agreement states in pertinent part:

> This Agreement is for a term of one (1) year and shall be automatically renewed for successive one (1) year terms, unless sooner terminated by either party. <u>Either party hereto may immediately terminate this Agreement upon written notice to the other</u>.

14

Sales Commission Agreement at ¶ 6, Exhibit 2 to Defendant's Exh. B (emphasis added).

Barrera received Acme's written notice of the termination of her Sales Commission

Representative Agreement effective April 30, 2013.  Defendant's Exh. B, plaintiff's first

deposition, at pp. 101-02.

Under Louisiana law, a breach of contract results from nonperformance, defective

performance or delay in performance.  A contracting party is liable for the damages

caused by his failure to perform.  La. Civ. Code art. 1994.  To establish a breach of

contract, Barrera must show, among other things, that Acme failed to perform an

obligation under the contract.  Id.

A party does not breach a contract by invoking a right, including a right to

terminate the agreement, that the contract expressly gives to the party.  Schaumburg v.

State Farm Mut. Auto. Ins. Co., 421 F. App'x 434, 438-39 (5th Cir. 2011); Mobile-One

Auto Sound, Inc. v. Whitney Nat. Bank, 78 So. 3d 807, 815 (La. App. 4th Cir. 2011);

Jebaco, Inc. v. Harrah's Operating Co., No. 2010-0872, 2011 WL 9159632, at *4 (La.

App. 4th Cir. Jan. 12, 2011).  Acme did not breach the Sales Commission Representative

Agreement with plaintiff because either party had an express right to terminate at any time

with written notice.

Barrera testified that her breach of contract claim is based on Aulds's alleged

sexual harassment and that this harassment is the only basis for her breach of contract

15

claim.  Defendant's Exh. C, plaintiff's second deposition at p. 138.  Plaintiff has not identified any obligation of the Sales Commission Representative Agreement that Acme breached because Aulds sexually harassed her.  Accordingly, Acme is entitled to summary judgment in its favor as a matter of law on plaintiff's breach of contract claim.

5.   Plaintiff's defamation claims against Acme, Aulds and Coatney

Barrera testified that she had no knowledge that Coatney ever said anything negative, derogatory or defamatory about her.  Defendant's Exh. C, plaintiff's second deposition at p. 198.  In the absence of evidence that Coatney made any such statements, he is entitled to summary judgment in his favor on plaintiff's defamation claim.

Barrera testified that, in January 2012, Aulds told people who worked at other Acme terminals that she was on drugs and she slept around.  She testified that she heard about these statements before February 16, 2012, from the people who heard Aulds make the comments.  Plaintiff testified that Aulds did not make any similar statements about her between February 16, 2012, and the end of April 2013, when Acme shut down her terminal.  Id. at pp. 169, 171, 178.

Defamation is subject to a one-year prescriptive period pursuant to Louisiana Civil Code article 3492, which "begin[s] to run once the plaintiff becomes aware of the damage-causing publication." Atkins v. Se. Cmty. Health Sys., No. 11-00047-BAJ-RLB, 2015 WL 9307269, at *6 (M.D. La. Dec. 21, 2015) (citing Clark v. Wilcox, 928 So. 2d

104, 112 (La. App. 1st Cir. 2005)).  Barrera knew about Aulds's allegedly derogatory statements about her before February 16, 2012.  However, she did not file suit for defamation until April 22, 2014, more than two years later.  Her defamation claim is time-barred to the extent it is based on statements of which she was aware before February 16, 2012.

Plaintiff testified that, after April 2013, Aulds told other terminal managers that he had shut down her terminal because she was on drugs and sleeping around.  She testified that she heard these reports "second hand" from other managers after her contract was terminated.  Id. at pp. 171, 178-79.  Barrera's defamation claim based on these alleged statements was filed within the one-year prescriptive period, but she fails to present any evidence to create a material fact issue for a viable defamation claim.

> Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name.  Four elements are necessary to establish a defamation cause of action:  (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. . . .  If even one of the required elements of the tort is lacking, the cause of action fails.

Costello v. Hardy, 864 So. 2d 129, 139-40 (La. 2004) (citing Cangelosi v. Schwegmann Bros. Giant Super Mkts., 390 So. 2d 196, 198 (La. 1980)) (quotations and additional citations omitted); accord Kennedy v. Sheriff, 935 So. 2d 669, 674-75 (La. 2006).

Acme argues that Barrera has no admissible evidence to support the publication prong of her defamation claim. "Publication refers to any nonprivileged communication of defamatory words, written or oral, and it renders a defendant liable for all republication that is the natural and probable consequence of the author's act." Atwood v. Grand Casinos of La., Inc., 887 So. 2d 634, 638 (La. App. 3d Cir. 2004) (quotation and citation omitted).

Plaintiff has proffered only inadmissible hearsay as evidence of Aulds's alleged comments, i.e., her own testimony that other terminal managers told her what Aulds had said about her. She admittedly never heard the alleged defamatory statements firsthand. Her testimony about what other persons told her "is textbook hearsay" because she is trying to use her own "recollection of what someone else[, not the defendant,] said" to prove that Aulds published the allegedly defamatory statements. Bellard v. Gautreaux, 675 F.3d 454, 461 (5th Cir. 2012). This proffered evidence of publication "is hearsay and does not fit any hearsay exception." Id.; accord Jehling v. A.H. Belo Corp., No. 3:11-CV-1258-B, 2013 WL 5803813, at *21 (N.D. Tex. Oct. 28, 2013); Simas v. Merrill Corp., No. 02 CIV.4400 RCC, 2004 WL 213013, at *8 (S.D.N.Y. Feb. 4, 2004) (citing Albert v. Loksen, 239 F.3d 256, 266 (2d Cir. 2001)).

Because Barrera has presented no admissible evidence to establish that Aulds published the alleged statements about her, no material fact issue is in dispute that she

cannot establish the second prong of the defamation standard.  Accordingly, the Acme defendants are entitled to summary judgment in their favor on plaintiff's defamation claims against them.

### 6.    Intentional infliction of emotional distress

Like her other tort claims, plaintiff's intentional infliction of emotional distress claim against the Acme defendants is subject to the one-year prescriptive period of Louisiana Civil Code article 3492.  Hoover v. SOS Staffing Servs., Inc., 584 F. App'x 190, 191 (5th Cir. 2014) (citing Rivers v. Zwolle, No. 10-0578, 2011 WL 1103792, at *2 (W.D. La. Mar. 22, 2011)); Pilie v. Shaw Envtl. & Infrastructure, Inc., No. 2013 CA 1105, 2014 WL 3555966, at *4 (La. App. 1st Cir. June 5, 2014) (citing King v. Phelps Dunbar, L.L.P., 743 So. 2d 181, 197 (La. 1999)).  Based on Barrera's testimony that the last act of alleged sexual harassment occurred during January 2013, Acme argues that her claim has prescribed.  Alternatively, Acme argues that plaintiff has no evidence that the alleged conduct was extreme enough to establish intentional infliction of emotional distress.

To the extent that Barrera relies on allegedly sexually harassing conduct that occurred on or before January 31, 2013, her claim has prescribed.  To the extent that she alleges that the conduct of Acme, Coatney or Aulds after that date, including the termination of her contract, amounts to intentional infliction of emotional distress,

plaintiff must establish that:  (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired or knew that severe emotional distress would be certain or substantially certain to result from his conduct. "Extreme and outrageous conduct" is defined as conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.

[Intentional infliction of emotional distress] claims will not lie for mere employment disputes since an employer must be free to demote, transfer, discipline, and terminate employees even though such actions will undoubtably be unpleasant and cause emotional distress.  Conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of "outrageous conduct." [O]rdinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of [intentional infliction of emotional distress] only in the most unusual of cases.  Such situations are limited to those where the distress is more than a reasonable person could be expected to endure.

Clayton v. John H. Stone Oil Distrib., LLC, No. 2:11-cv-2276, 2012 WL 4359293, at *10

(E.D. La. Sept. 21, 2012) (quotations omitted) (citing Dean v. Ford Motor Credit Co., 885

F.2d 300, 306 (5th Cir. 1989); Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1027 (La.

2000); White v. Monsanto Co., 585 So. 2d 1205, 1209-10 (La. 1991); Johnson v. Merrell

Dow Pharm., Inc., 965 F.2d 31, 33-34 (5th Cir. 1992); Barber v. Marine Drilling Mgt.,

Inc., No. 01-1986, 2002 WL 237848, at *8 (E.D. La. Feb. 15, 2002)).  A plaintiff's failure

to present evidence to establish any one of the three elements is fatal to her claim.

"Conduct which is merely [tortious] or illegal does not rise to the level of being extreme and outrageous." Nicholas, 765 So. 2d at 1025. Louisiana Civil Code article 2315, from which the cause of action for intentional infliction of emotional distress derives, "does not create liability for employment discrimination." Iturralde v. Shaw Group, Inc., 512 F. App'x 430, 435 (5th Cir. 2013) (citing Hornsby v. Enter. Transp. Co., 987 F. Supp. 512, 515 (M.D. La. 1997)) (emphasis added). "Employment disputes must have some quality that places them beyond the ordinary in order to qualify for intentional infliction of emotional distress." Charles v. JetBlue Airways Corp., No. 08-40, 2009 WL 273206, at *12 (E.D. La. Jan. 26, 2009) (citing Dean v. Ford Motor Credit Co., 885 F.2d 300 (5th Cir. 1989)). "Courts 'have consistently limited causes of action for [intentional infliction of emotional distress] in the workplace to cases which involve a pattern of deliberate, repeated harassment over a period of time.'" Iturralde, 512 F. App'x at 435 (quoting Nicholas, 765 So. 2d at 1026) (internal quotation omitted)). "Mere violation of laws regulating conduct in the workplace is not enough to establish intentional infliction." Skidmore v. Precision Printing & Pkg., Inc., 188 F.3d 606, 613 (5th Cir. 1999) (under Texas law, which is identical to Louisiana law).

Barrera has presented no competent summary judgment evidence to create a disputed fact issue that the conduct of which she complains went beyond all possible bounds of decency and was atrocious and utterly intolerable. The few, widely spaced

incidents of alleged sexual harassment about which she testified (which occurred before February 2013), even if they could be combined with the termination of her contract in April 2013 for purposes of her intentional infliction of emotional distress claim, do not rise to the level of extreme and outrageous conduct.   Plaintiff's evidence of sexual harassment includes her testimony that:

- On several occasions between 2009 and 2013, Aulds asked Barrera to meet him at his hotel room.  Defendants' Exh. B, plaintiff's first deposition at p. 137.  On a few occasions between 2009 and 2011, Aulds asked her to meet him at his hotel to "lay down with him."  Id. at p. 161.  On one of those occasions in January 2013, plaintiff and Aulds were staying in the same hotel for a conference, and Aulds asked her to come check on him because he was ill.  Id. at p. 138; Defendants' Exh. C, plaintiff's second deposition at p. 152.

- Twice between 2009 and 2013, Aulds appeared at the same bar or restaurant as Barrera.  Defendants' Exh. B, at pp. 149-150, 157.

- Plaintiff believed that Aulds wanted to have a relationship with her.  Id. at p. 152.

These events simply do not raise a material fact issue of extreme and outrageous conduct.  See Lambert v. Ware, No. 12-2058, 2013 WL 139882, at *2-3 (E.D. La. Jan. 10, 2013) (citing Deus v. Allstate Ins. Co., 15 F.3d 506, 514-15 (5th Cir. 1994); Griffith v. Louisiana, 808 F. Supp. 2d 926, 935 (E.D. La. 2011); Guichard v. Louisiana, No. 11-535, 2011 WL 3900051, at *5-6 (E.D. La. Sept. 6, 2011); Washington v. Davis, No. 01-1863, 2001 WL 1287125, at *8 (E.D. La. Oct. 23, 2001); White, 585 So. 2d at 1209) (no

outrageous conduct when plaintiff's supervisor consistently harassed her about her weight and made derogatory comments, threatened weekly to terminate her if she did not do certain tasks or work on her off days, harassed her outside of the office by texting and calling her, misled plaintiff into calling in prescriptions for patients who were supervisor's friends and relatives, lashed out at her when she brought up discrepancies in her paycheck, and dropped off her personnel file at her home after her termination); Guichard, 2011 WL 3900051, at *6 (citing Smith v. Amedisys Inc., 298 F.3d 434, 437-48 (5th Cir. 2002); Charles v. JetBlue Airline Corp., No. 08-40, 2009 WL 273206, at *4, 12 (E.D. La. Jan. 26, 2009); Washington v. Mother Works, Inc., 197 F. Supp. 2d 569, 572-73 (E.D. La. 2002)) ("Intentional firing after making a complaint for sexual harassment is not actionable under [intentional infliction of emotional distress.]"); cf. Skidmore, 188 F.3d at 613 (Plaintiff survived summary judgment on intentional infliction of emotional distress claim with evidence that male co-worker's "improper conduct was persistent and long-standing," including subjecting her to sexually suggestive touching, constantly making sexual remarks, laughing at her reactions to his uninvited harassment, asking her to leave her husband for him and, knowing that false rumors of a sexual relationship between co-worker and plaintiff had reached her husband and threatened her marriage, did not deny the relationship.); Clayton, 2012 WL 4359293, at *10 (Plaintiff stated a claim for intentional infliction of emotional distress when he alleged that his employer

had ignored his prior complaints and his co-workers' alleged remarks and actions against him, including a fight and beating, caused him to jump off the vessel and swim in the Mississippi River out of fear for his safety.).

In addition, Barrera has failed to proffer any evidence that she suffered severe emotional distress to satisfy the second prong of the standard, which "requires that '[t]he distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental anguish or suffering is extreme.'" Smith, 298 F.3d at 449 (quoting White, 585 So. 2d at 1209).

Plaintiff never complained about sexual harassment to anyone at Acme's corporate headquarters.  Defendants' Exh. B, plaintiff's first deposition at p. 191.  Her terminal operation was successful during the entire time she managed it under her contract with Acme. Id. at p. 196.  She started working immediately for another trucking company after Acme terminated her contract.  Id. at p. 95.  These facts are inconsistent with severe emotional distress.  See Smith, 298 F.3d at 450 (Although plaintiff "experienced emotional distress as a result of this [sexual] harassment and losing her job at Amedisys, the evidence does not show that the distress was 'unendurable.'").

Accordingly, the Acme defendants are entitled to summary judgment as a matter of law on plaintiff's intentional infliction of emotional distress claim.

C.    Quad B's Motion for Summary Judgment

24

Breaux and Quad B owned and operated Acme Terminal 59 in New Iberia, Louisiana. Barrera worked for these defendants at Terminal 59 from January 2008 to August 2008, when she quit that job and later opened her own terminal with Acme. Record Doc. No. 123-4, Defendants' Exh. A, plaintiff's first deposition, at pp. 55, 178, 183-84, 187.[5]

### 1.   Plaintiff's defamation claim against Breaux and Quad B

Plaintiff's defamation claim against Breaux and Quad B stems from alleged statements by Breaux in the spring of 2012. Barrera sent an email to Aulds on February 16, 2012, complaining of defamatory statements that Breaux had allegedly made to one of her drivers, who relayed the statements to plaintiff. Defendants' Exh. C, exhibit 6 to plaintiff's deposition. Barrera testified that the last allegedly defamatory statement by Breaux was made in the spring of 2012, specifically, on or about April 30, 2012. Record Doc. No. 123-4, Defendants' Exh. A, plaintiff's first deposition at pp. 165-66; Record Doc. No. 123-9, Defendants' Exh. F, plaintiff's second deposition at p. 223. Construing these facts in the light most favorable to Barrera, it is undisputed that any defamatory statements by Breaux occurred no later than April 30, 2012.

---

[5]All citations to defendants' exhibits in this section of this decision are to the Quad B defendants' exhibits attached to their motion for summary judgment. Record Doc. No. 123.

As previously discussed, defamation claims are subject to a one-year prescription that begins to run once plaintiff becomes aware of the defamatory publication. La. Civ. Code art. 3492; Atkins, 2015 WL 9307269, at *6. Barrera did not file the instant lawsuit until April 30, 2014, two years after Breaux's last allegedly defamatory statement. Her defamation claim had already prescribed when she filed suit.

Alternatively, Quad B contends that plaintiff has proffered only inadmissible hearsay as evidence of publication of Breaux's alleged comments, i.e., her own testimony that she heard from third parties what Breaux had said about her. Barrera admittedly never heard Breaux make any defamatory statements. During the recorded telephone conversation that she submitted as evidence, Breaux denied that he ever made any negative comments about her. Quad B has submitted affidavits from three persons who are listed as witnesses on plaintiff's witness list, Record Doc. No. 97. All three deny that they ever heard any disparaging statements about Barrera made by Breaux or anyone else acting for Quad B. Record Doc. No. 123-7, Defendants' Exh. D, affidavit of Mary Abney; Record Doc. No. 123-8, Defendants' Exh. E, affidavit of Anthony Delahoussaye; Record Doc. No. 123-10, Defendants' Exh. G, affidavit of Donald Wilson.

Plaintiff's own testimony about what other people told her "is textbook hearsay" because she is trying to use her own "recollection of what someone else[, not the defendant,] said" to prove that Breaux published the allegedly defamatory statements.

26

Bellard, 675 F.3d at 461.  This proffered evidence of publication "is hearsay and does not fit any hearsay exception."  Id.; accord Jehling, 2013 WL 5803813, at *21; Simas, 2004 WL 213013, at *8.

Because Barrera has proffered no admissible evidence to establish that Breaux and/or Quad B published the alleged statements about her, she cannot establish the second prong of the defamation test.  Accordingly, these defendants are entitled to summary judgment in their favor as a matter of law on plaintiff's defamation claim.

        2.     Plaintiff's intentional infliction of emotional distress claim against Breaux and Quad B

Barrera's claim for intentional infliction of emotional distress against Breaux and Quad B stems from the same allegedly defamatory statements made by Breaux no later than April 30, 2012, discussed in the preceding section of this decision.  Because plaintiff's intentional infliction of emotional distress claim is subject to the same one-year prescriptive period as her defamation claim, it had already prescribed when she filed the instant lawsuit.

To the extent that Barrera asserts a claim for intentional infliction of emotional distress against Breaux and Quad B based on events that occurred within one year before she filed the instant lawsuit, her only allegations that might constitute intentional infliction of emotional distress are that Breaux made false and defamatory statements about her.

Because plaintiff has no admissible evidence that Breaux ever made any derogatory statements, she cannot establish that defendants' conduct was so extreme and outrageous as to constitute intentional infliction of emotional distress.  Accordingly, Quad B and Breaux are entitled to summary judgment in their favor as a matter of law on this claim.

### 3.    Plaintiff's Title VII claims against Quad B

Barrera was an employee of Quad B from January to August 2008.  She never filed a charge of discrimination against Quad B with the EEOC.  As previously discussed, the filing of such a charge within 300 days of the last allegedly discriminatory act is a prerequisite to filing a Title VII suit in Louisiana.  Janmeja, 96 F. App'x at 214.  Failure to file a charge and exhaust administrative remedies before filing suit will result in dismissal of the lawsuit.  Nat'l R.R. Passenger Corp., 536 U.S. at 109; Hague, 560 F. App'x at 331; Price, 459 F.3d at 598.  Accordingly, Quad B is entitled to summary judgment as a matter of law on plaintiff's Title VII claims.

### 4.    Plaintiff's claims against Quad B under the Louisiana Employment Discrimination Law and Louisiana whistleblower statute

As Barrera's employer in 2008, Quad B is subject to the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:301 et seq., and whistleblower statute, La. Rev. Stat. § 23:967.  The Louisiana Employment Discrimination Law contains a one-year prescriptive period.  La. Rev. Stat. § 23:303(D).  Prescription begins to run on the date

the last allegedly discriminatory action occurred.  Williams v. Cardinal Health 200, LLC, 948 F. Supp. 2d 652, 660 (E.D. La. 2013); Bellow v. Bd. of Supervisors, 913 F. Supp. 2d 279, 289 (E.D. La. 2012), aff'd, 550 F. App'x 181 (5th Cir. 2013); Eastin v. Entergy Corp., 865 So. 2d 49, 53-54 (La. 2004).

The whistleblower statute contains no specific prescriptive period.  Because whistleblower claims are delictual in nature, they are subject to the general one-year prescriptive period of Louisiana Civil Code article 3492.  Pilie, 2014 WL 3555966, at *4 (citing Nolan v. Jefferson Parish Hosp., 790 So. 2d 725, 733 (La. App. 5th Cir. 2001)); Murray v. Louisiana, No. 08-254-RET-SCR, 2011 WL 703653, at *7 (M.D. La. Feb. 2, 2011), report & recommendation adopted, 2011 WL 706495 (M.D. La. Feb. 18, 2011), aff'd, 439 F. App'x 349 (5th Cir. 2011).

Barrera quit her job at Quad B in August 2008.  Any discrimination or retaliation for whistleblowing activity by Quad B necessarily occurred before August 31, 2008, at the latest.  Both of plaintiff's claims prescribed no later than August 31, 2009, long before she filed the instant lawsuit.  Quad B is entitled to summary judgment in its favor as a matter of law on plaintiff's claims under these two statutes.

<u>CONCLUSION</u>

For all of the foregoing reasons, **IT IS ORDERED** that defendants' motions for summary judgment are GRANTED and that all of plaintiff's claims are DISMISSED WITH PREJUDICE.  Judgment will be separately entered.

New Orleans, Louisiana, this ____25th____ day of May, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE